UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALBERN L. SPOOLSTRA,<br><br>Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 3:12-cv-00340-BLW<br><br>**ORDER** |

## INTRODUCTION

In 2001, plaintiff Albern Spoolstra brought suit against the United States under the Quiet Title Act, 28 U.S.C. § 2409a, to define the scope of two easements the government acquired on his property pursuant to deeds executed by his predecessor in interest in 1950 and 1957. That suit ended when the Ninth Circuit Court of Appeals held that his suit was barred because Spoolstra did not file his complaint within the Quiet Title Act's twelve-year limitations period, which is a jurisdictional defect.

In 2012, Spoolstra filed the instant action under the Act in an attempt to define the scope of the same two easements. The government moved to dismiss this case under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Having considered the parties' briefs, the Court concludes that the government's motion is suitable for resolution

without a hearing. *Local R. Civ. P.* 7.1(d)(1)(B). Because Spoolstra has not identified any material change since his last suit, the Court concludes that it still lacks subject matter jurisdiction and will dismiss this suit with prejudice.

## BACKGROUND

Spoolstra owns property along the east bank of the Clearwater River near Grangeville, Idaho. In 1950 and 1957, Spoolstra's predecessors in interest, the Dufurs, granted to the United States two easements across Spoolstra's property. *See Spoolstra v. United States* ("*Spoolstra III*"), Case No. 3:12-cv-00340-BLW, *Compl.* Dkt. 1, Attach. A-C. It is undisputed that the 1950 easement covers U.S. Forest Service Road 475 from the site of the old Cox Sawmill and running east across Spoolstra's property. *Id.* The central issue of the parties' dispute, in this suit and the previous suit, is whether the 1950 easement extends from the Cox Sawmill in a southerly direction along a switchback to the east bank of the Clearwater River ("the disputed area"), thereby giving the public access to the Nez Perce National Forest beyond. *Compare Spoolstra v. United States* ("*Spoolstra I*"), Case No. 3:01-cv-00619 (D. Idaho 2001), Dkt. 82 at 4-5, *with Spoolstra III*, *Compl.* Dkt. 1 at 3-4.

### 1. 2001 Litigation

In this Court, Spoolstra's first suit ended following a two-day bench trial presided over by Circuit Judge Thomas G. Nelson, sitting by designation. *Spoolstra I*, Dkt. 82 at 2, 20. Judge Nelson found that the origin of the 1950 easement was the east bank of the Clearwater River, and not the Cox Sawmill site as Spoolstra contended. *Id.* at 7. Judge

Nelson based his finding on (1) the fact that the Forest Service and Dufurs intended the easement to serve as a "connecting link" between Road 475 and the 1957 easement and (2) and the testimony of Ms. Cox, of the Cox Sawmill, who stated that when the Forest Service questioned whether they had an easement extending to the river's bank, "they came down to straighten that out." *Id.* at 7-8.

Evidence was also introduced in the course of the trial of the government's use of the disputed area. For example, the Forest Service used the switchback "as part of its routine maintenance of the Nez Perce National Forest lands" for more than 40 years. *Id.* at 6.

Based on his finding and the evidence regarding the government's use, Judge Nelson held that the United States obtained an easement over the disputed area either by the terms of the 1950 assignment or by prescription. *Id.* at 12-13. Judge Nelson ordered the government to file with the court a proposed judgment reflecting his holding along with an exhibit showing the location of the government's easements. *Id.* at 20. The government complied by filing a map prepared by Anthony Bachman, a certified U.S. Forest Service land surveyor. *Spoolstra III*, Dkt. 11-2 at 2, 5. Spooltra appealed the adverse judgment to the Ninth Circuit. *Spoolstra v. United States* ("*Spoolstra II*"), 298 F. App'x. 577 (9th Cir. 2008).

However, the circuit court never reached the merits of the case. Instead, the court raised the issue of subject matter jurisdiction *sua sponte*. *Id.*, Dkt. 28. Following briefing from the parties, the court vacated the judgment in *Spoolstra I* and dismissed the case for

lack of subject matter jurisdiction. *Id*. at 578.   The court reasoned that, because "[b]oth easements were recorded, and the government's use was open, notorious and adverse after 1950 and before 1989" – more than twelve years before Spoolstra filed his complaint – the action was barred by the Quiet Title Act's twelve-year limitations provision. *Id.* at 578-79.   That fact deprived the court of jurisdiction to hear Spoolstra's suit. *Id.* at 579.

## 2. **Spoolstra's Current Suit**

Although Bachman is a licensed surveyor, he is not licensed in Idaho.  As a result, the survey he conducted at Judge Nelson's behest could not be recorded in Idaho's land records.  At some point in 2006, the government commissioned a second survey that could be recorded.

To that end, Bachman and James Man, a professional land surveyor who is licensed in Idaho, resurveyed the government's easements over Spoolstra's property. *Spoolstra III*, Dkt. 11-2 ¶5.  The result of their efforts was the "Right-of-Way Plat, Downey Creek Road No. 475." *Id.*, Dkt. 1 at 15.  This second survey, consistent with Bachman's first survey, shows the government's easement over the disputed area between the riverbank and the Cox Sawmill.  The Forest Service recorded the second survey on July 11, 2006. *Id.*

Spoolstra filed his complaint in this action on July 5, 2012. *Spoolstra III*, Dkt. 1. He alleges that by recording the second survey six years earlier, the government attempted to "create new rights that exceed the scope of the 1950 and 1957" easements

by extending the easement between the east bank of the Clearwater River and the site of the old Cox Sawmill.  *Id.* at 3-4.  In response, the government filed this motion to dismiss, arguing that the Court lacks subject matter jurisdiction and that Spoolstra's claim is barred by claim preclusion.  *Dkt.* 1.

Because Spoolstra fails to allege that the government has expanded its use within the past twelve years, the Court concludes that Spoolstra's claim is barred by the Quiet Title Act's twelve-year limitation period.  The Court therefore lacks jurisdiction over Spoolstra's suit.  Spoolstra, however, may amend his complaint if he can properly allege that the 2006 survey expanded the government's use beyond the disputed area between the riverbank and the Cox Sawmill.  If, however, Spoolstra only disputes the government's interest in this area between the riverbank and the Cox Sawmill as he did in his previous lawsuit, this Complaint will be dismissed with prejudice for lack of jurisdiction.

## ANALYSIS

The Quiet Title Act is "the exclusive means by which adverse claimants [may] challenge the United States' title to real property."  *Block v. North Dakota*, 461 U.S. 273, 286 (1983).  Subsection (g) of the Act states, "Any civil action under this section . . . shall be barred unless it is commenced within twelve years of the date upon which it accrued."  28 U.S.C. § 2409a(g).

The waiver of sovereign immunity contained in the Quiet Title Act is not unconditional; suits must be brought within the twelve year statute of limitations. 28

U.S.C. § 2409a(g). When legislation waiving sovereign immunity contains a statute of limitations, the statute of limitations constitutes a condition on the waiver of sovereign immunity. *Block v. North Dakota*, 461 U.S. 273, 287 (1983). The Quiet Title Act statute of limitations is jurisdictional. *Park County, Mont. V. U.S.*, 626 F.2d 718, 720 (9th Cir. 1980). Because the statute of limitations is a condition of the waiver of sovereign immunity, it is construed strictly in favor of the government. *Id.*

Contrary to Spoolstra's argument, the Court is not required to accept the factual allegations in his complaint as true. "In general, a district court is permitted to resolve disputed factual issues bearing upon subject matter jurisdiction in the context of a Rule 12(b)(1) motion unless the jurisdictional issue and the substantive issues are so intermeshed that the question of jurisdiction is dependent on decision of the merits." *Id.* at 1196-97 (internal quotation marks omitted).

The court must determine when the plaintiffs or their predecessors in interest knew or should have known of the government's interest in the property. This is a test of reasonableness. *State of California, ex rel. State Land Com'n v. Yuba Goldfields, Inc.*, 752 F.2d 393, 396 (9th Cir.1985). "The question is whether the United States' actions would have alerted a reasonable landowner that the government claimed an interest in the land." *Shultz v. Dept. of Army, U.S.*, 886 F.2d 1157, 1160 (9th Cir.1989). ). "The existence of [even] one uncontroverted instance of notice suffices to trigger the limitations period." *State of Nev. v. U.S.*, 731 F.2d 633, 635 (9th Cir. 1984)

In this case, the statutory period began to run when Spoolstra's predecessors reasonably should have known that the government had a conflicting claim to property he claims is his exclusively, regardless of how strong he believed that claim to be. *Guam v. United States*, 744 F.2d 699, 700 (9th Cir.1984).  Under this standard, Spoolstra's predecessors should have realized by 1989, at the very latest, that the government had a conflicting claim to the disputed area between the riverbank and the Cox Sawmill.  As the Ninth Circuit found in *Spoolstra III* , both the 1950 easement and the 1957 easement "were recorded, and the government's use was open, notorious and adverse after 1950 and before 1989."  Thus, Spoolstra's predecessors in interest had actual and constructive notice of the government's claim to the disputed area no later than 1989 – more than twelve years before this action was filed.

If, however, Spoolstra can allege in good faith that, in the past twelve years, the government has expanded its open, notorious, and adverse use of the easement beyond the original disputed area, Spoolstra may amend his complaint.  If, however, Spoolstra cannot make this claim in good faith and merely seeks to re-litigate his right to the disputed area, his Complaint will be dismissed with prejudice.

If Spoolstra does not amend his Complaint within thirty (30) days from the date of this Order, the Court will enter a further order dismissing the case with prejudice.

## ORDER

**IT IS ORDERED THAT:**

1.      Defendant's Motion to Dismiss (Dkt. 11) is **GRANTED**.

2.      Spoolstra is granted leave to amend his Complaint in accordance with this

decision.

3.      If Spoolstra does not amend his Complaint within thirty (30) days from the

date of this Order, the Court will enter a further order dismissing the case

with prejudice.

DATED: June 7, 2013

B. Lynn Winmill
Chief Judge
United States District Court